FILED

JUN 2 8 2002

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFOR.

DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----ooOoo----

AMERICAN BANKERS ASSOCIATION, a national trade association; et al.,

    Plaintiffs,

v.

BILL LOCKYER, in his official capacity as Attorney General of the State of California, et al.,

    Defendants.

NO. CIV. S-02-1138 FCD/JFM

MEMORANDUM AND ORDER

----ooOoo----

This matter is before the court on plaintiffs' motion for a preliminary injunction enjoining the implementation of California Civil Code section 1748.13 (hereinafter "§ 1748.13"), set to become law on July 1, 2002.[1] The court heard oral argument on the matter on June 28, 2002.

---

[1] All portions of the statute are to become law on July 1, 2002, except for provisions of subdivision (a)(3)(C), which are to become operative on January 1, 2003.

For the reasons stated below, the court does not render a final decision on the motion at this time.  Rather, a continued hearing on the motion will be held on November 8, 2002 at 10:00 a.m. in Courtroom 2; the parties will be permitted to conduct discovery pertaining to the motion until August 30, 2002. Pending the further hearing on the motion, the court enjoins the enactment of the statute.

**BACKGROUND**

Section 1748.13 contains language and information that must be placed on the billing statements credit card issuers provide their cardholders.  The statute applies to all credit cards[2], but differentiates "retail credit cards" as a separate category.[3] § 1748.13(b)(3).

According to the State, the statute was designed to provide credit card users with warnings about the length of time and total amount of cost a cardholder will incur if (s)he repays the outstanding balance on a credit card by remitting only the minimum payment on each periodic bill.  The statute requires credit card issuers to include the warnings contemplated by the statute except in billing cycles where they either: (1) require a minimum payment of at least 10% of the cardholder's outstanding balance or (2) do not impose finance charges.  § 1748.13(c)(1)-(2).

---

[2]   Credit cards are defined under § 1748.12 as "[a]ny card, plate, coupon book, or other single credit device existing for the purpose of being used from time to time upon presentation to obtain money, property, labor or services on credit."

[3]   Retail credit cards are those that are "[i]ssued by or on behalf of a retailer, or a private label credit card that is limited to customers of a specific retailer." 1748.13(b)(3).

2

When credit card issuers do not meet these exceptions, they must provide the warnings and information contemplated by the statute to cardholders. First, each cardholder's bill must display two messages, on the front of the first page, in capitalized type that is at least 8-point size. The first message is required and states, "Minimum Payment Warning: Making only the minimum payment will increase the interest you pay and the time it takes to repay your balance." § 1748.13(a)(1). The second message is also required, but allows the credit card issuer to decide between two optional methods of presenting further warnings and distributing information required by the statute. The credit card issuer must decide to provide one of the following options.

The first option is under § 1748.13(2)(A). It provides that immediately after the Minimum Payment Warning, the credit card issuer must provide a short statement that describes the time it would take and the total cost to a cardholder if (s)he paid off balances of $1000, $2500, and $5000 by paying only the minimum payment, if the billing was based on an annual percentage rate of 17% and a minimum payment of 2% of the bill or $10 (whichever was greater). Credit card issuers can satisfy the requirements of this option if they provide the same information for the three specified balance amounts at the annual percentage rate and required minimum payment which are applicable to an individual cardholder's account. § 1748.13(a)(1)(A)(i).[4] If the credit card issuer chooses to provide this message, then immediately

---

[4] Similar requirements are imposed on retail credit card issuers. § 1748.13(a)(2)(A)(ii).

following the required wording, it must provide the following written statement: "For an estimate of the time it would take to repay your balance, making only minimum payments, and the total amount of those payments, call this toll-free number: (Insert toll-free telephone number)." § 1748.13(a)(3)(A). The statute requires that the toll-free number be available between the hours of 8 a.m. and 9 p.m. Pacific Standard Time, seven days a week, and provide consumers with the opportunity to speak to a person, rather than a recording, from whom the individualized account information discussed above can be obtained. § 1748.13(a)(3)(B).

The second option, under § 1748.13(2)(B), allows a creditor to print a written statement on the front of the first page of the bill that provides individual, "customized" information to the cardholder. This information would indicate an estimate of the number of years and months and the approximate total cost to pay off the entire balance due on an account if, based on the terms of the credit agreement, the cardholder were to pay only the minimum amount due for each bill. If the credit card issuer chooses this option, the bill must also provide the cardholder with either a referral to a credit counseling service or the "800" number for the National Foundation for Credit Counseling (through which the cardholder can be referred to credit counseling services in, or closest to, the cardholder's county of residence).[5] A credit card issuer is *required* to use this option if the cardholder has not paid more than the minimum payment for

---

[5] If the credit card issuer employs this option and the account is based on a variable rate, the credit card company may make disclosures based on the rate for the entire balance as of the date of the disclosure and indicate that the rate may vary.

4

1 | 6 consecutive months after July 1, 2002.  § 1748.13(a)(2)(B).
2 | Additionally, the statute mandates that the Department of
3 | Financial Institutions ("DFI") establish a detailed table
4 | illustrating the approximate number of months and approximate
5 | total cost to repay an outstanding balance if the consumer pays
6 | only the required minimum monthly payments and if no other fees
7 | are incurred.  § 1748.13(a)(3)(C).  These tables must consider: a
8 | significant number of interest rates (§ 1748.13(a)(3)(C)(i)); a
9 | significant number of different account balances (with the
10 | difference between amounts considered no greater than $100)
11 | (§ 1748.13(a)(3)(C)(ii)); a significant number of different
12 | payment amounts (§ 1748.13(a)(3)(C)(iii)); and that only minimum
13 | monthly payments are made with no additional charges or fees
14 | incurred on the account.  § 1748(a)(3)(C)(iv).
15 | The information developed by the DFI can be referenced when
16 | a cardholder calls the toll free line and requests information on
17 | how long and at what cost they would pay off a balance using a
18 | minimum payment, or when the credit card issuer is required to
19 | disclose this information to cardholders who have paid the
20 | minimum for 6 consecutive months.  However, credit card issuers
21 | are not allowed to include the full chart with a billing
22 | statement to satisfy their obligations under the statute.
23 | § 1748.13(a)(3)(D).
24 | By this lawsuit, plaintiff seeks to enjoin the commencement
25 | and enforcement of this statute on the following grounds: (1)
26 | under the Supremacy Clause, the statute is preempted by the
27 | National Bank Act of 1864 ("NBA"), 12 U.S.C. §§ 21 *et seq.*,
28 | and/or the Federal Credit Union Act ("FCUA"), 12 U.S.C. §§ 1751

*et seq.*; (2) the statute violates the dormant commerce clause; and (3) the statute violates 42 U.S.C. § 1983 because it violates either the National Bank Act, the Federal Credit Union Act or the Constitution.  Compl., filed May 24, 2002, ¶¶ 3, 10.

### STANDARD

To prevail on its request for a preliminary injunction, plaintiff must show either "(1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." Dollar Rent A Car of Wash., Inc. v. The Travelers Indem. Co., 774 F.2d 1371, 1374-75 (9th Cir. 1995) (quoting Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1201 (9th Cir. 1980)). "Under either formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury." Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc., 762 F.2d 1374, 1376 (9th Cir. 1985).  In the absence of a significant showing of irreparable injury, the court need not reach the issue of likelihood of success on the merits. See id.  Unexplained delay in seeking preliminary injunctive relief may weigh against claims that plaintiff faces "irreparable injury." Miller v. Cal. Pac. Med. Ctr., 991 F.2d 536, 544 (9th Cir. 1993).

### ANALYSIS

The two primary issues before this court are: (1) whether the NBA or the FCUA preempts § 1748.13; and (2) whether § 1748.13

violates the dormant commerce clause.[6] Plaintiffs contend that the California law is unduly burdensome, so much so that it impermissibly infringes upon the banks' federally granted right to conduct business efficiently. They also allege that the burdens of § 1748.13 on interstate commerce are so great, and its benefits to the State so minimal, that it violates the dormant commerce clause.

In determining whether the NBA preempts state law, courts have articulated a general rule, which contains an exception:

> the rule being the operation of general state laws upon the dealings and contracts of national banks; the exception being the cessation of the operation of such laws whenever they expressly conflict with the laws of the United States, or frustrate the purpose for which the national banks were created, or impair their efficiency to discharge the duties imposed on them by the law of the United States. <u>First Nat'l Bank in St. Louis v. Missouri</u>, 263 U.S. 640, 656 (1924).

Thus, the core question before this court is whether § 1748.13 has so onerous an effect upon credit card issuers that it ceases to operate as a general state law upon "the dealings and contracts of national banks" and instead frustrates the purpose for which the national banks were created.

Under the FCUA, 12 C.F.R. § 701.21(b)(1) provides that the FCUA preempts "any state law purporting to limit or affect . . . terms of repayment, including: . . . The amount, uniformity, and frequency of payments." The Court will need to

---

[6] Plaintiffs do not base their motion on § 1983. However, if a violation of the NBA or the Constitution exists, it can serve as the predicate basis for the assertion of a § 1983 claim.

determine whether this regulation conflicts with any portion of § 1748.13, or with the statute in its entirety.[7]

Regarding the commerce clause, Congress is empowered to regulate commerce among the several states. U.S. Const. art. I, § 8, cl. 3. Where Congress has not enacted laws concerning issues involving interstate commerce, its commerce power lies dormant. This does not, however, allow states to pass laws that unduly interfere with interstate commerce. The so-called "dormant commerce clause" thus stands for the principle that state laws are unconstitutional if they place an undue burden on interstate commerce.

In this case, the applicable test is as follows: When a state law does not discriminate on its face against out-of-state business (which there is no contention here that § 1748.13 does), there is a presumption in favor of upholding the state law. In that circumstance, the test for determining the validity of a state law is to balance the burdens the statute places on interstate commerce against the local benefits. "Where the state regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).

To evaluate the "likelihood of success on the merits" of either the preemption or the dormant commerce clause arguments,

---

[7] Plaintiffs allege that other federal statutes, such as the Home Owners' Loan Act, 12 U.S.C. § 1462 et seq., may also conflict with § 1748.13 in whole or in part.

this court must weigh the benefits of California's (purported) new consumer protection law against the burdens and restraints that the law imposes upon credit card issuers. This question requires a highly fact-sensitive analysis. Presently, however, the court finds that the parties have supplied insufficient information for the court to make this analysis.

First, plaintiffs have not submitted sufficient information to provide a contextual basis upon which to judge the nature and extent of the burden they assert they face. While plaintiffs have submitted a number of declarations seeking to specify the burdens they will face if this statute goes into effect, the court finds portions of this information to be vague and incomplete. For example, plaintiffs have not made clear which costs they have incurred in seeking to prepare for the implementation of this law and the costs they expect to incur in the future if the law goes into effect. Additionally, some plaintiffs have alleged that they will suffer decreases in revenue if they are not able to place their customary advertisements on the billing statements. With regard to this assertion, the parties have not developed evidence of a causal relationship between the positioning of the advertising and the revenue some declarations claim such positioning generates. Also, plaintiffs provided no evidence of the additional costs of compliance with this statute in comparison to the revenues generated from California. Finally, plaintiffs did not show the costs *each* element of the statute will force them to bear. This analysis would be particularly relevant should the court decide that portions of the statute are valid while others are not.

1  As for defendants, the State offers little in the way of a
2  detailed description of the benefits that will accrue to the
3  citizens of California. Rather, defendants state that the
4  benefit to the citizens of the State is "self evident" and cite
5  polling data indicating that consumers believe information
6  regarding the extent of time to pay off a credit card would be of
7  use to them. Defs.' Opp'n at 34, 35. Such generalities are of
8  little value when assessing benefits. Under the balancing test
9  contemplated in Pike, defendants need to supply information that
10 addresses the nature and scope of the benefits that will be
11 derived from this statute.
12 The court is keenly aware of the time deadlines involved in
13 this case, and it has considered the delay by plaintiffs in
14 bringing this motion.[8] Clearly, the failure of plaintiffs to
15 allow sufficient time for both the parties and the court to
16 address all the facts is not an insignificant consideration.
17 However, because the court has serious concerns regarding the
18 validity of at least portions of the statute, it cannot find that
19 plaintiffs' delay prevents an interim stay. Accordingly, as a
20 court of equity under such circumstances, the court must stay the
21 effective date of the statute so that it may make an informed
22 decision on a complete record.

---

[8] Plaintiffs knew of the statute since October 2001 when it was signed; some of the named plaintiffs participated in the legislative process through lobbying efforts. Yet plaintiffs did not file this lawsuit until May 24, 2002 and did not notice their motion for hearing until June 28, 2002 (one business day before the statute was to go into effect).

**CONCLUSION**

The court finds the record, in its present form, insufficient for the court to reach a decision as to the issuance of a preliminary injunction. In order to address the issues described above and considering the shortness of time that the parties had to present their positions to the court, the court will allow the parties to conduct discovery on issues pertaining to the motion until August 30, 2002. Thereafter, plaintiffs shall file and serve a supplemental opening brief, not to exceed 40 pages in length, addressing the issues described herein and any matters raised in discovery,[9] on or before September 20, 2002. Defendants shall file and serve an opposition thereto (addressing the same matters), not to exceed 50 pages in length, on or before October 11, 2002. Plaintiffs shall file and serve a reply thereto, not to exceed 20 pages in length, on or before October 25, 2002.[10] A continued hearing on the matter will be held on November 8, 2002 at 10:00 a.m. in Courtroom 2.

IT IS SO ORDERED.

DATED: June 28, 2002

FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE

---

[9] The court will by subsequent order ask the parties to address specific questions in their supplemental briefing; the questions may also serve to focus the discovery on matters of particular interest to the court.

[10] The parties are permitted to file declarations in support of their supplemental briefs.

```
                United States District Court
                           for the
                  Eastern District of California
                         June 28, 2002


                  * * CERTIFICATE OF SERVICE * *


                                       2:02-cv-01138


   American Bankers

       v.

   Lockyer

_____


I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  June 28, 2002, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


       John Joseph Quinn Jr                        MP/FCD
       Arnold and Porter
       777 South Figueroa Street
       44th Floor
       Los Angeles, CA   90017-2513

       Susan Eileen Henrichsen
       Attorney General of the State of CA
       PO Box 85266
       110 West A Street
       Suite 1100
       San Diego, CA   92186-5266

       Douglas B Jordan
       NOT EDCA ADMITTED
       Office of the Comptroller
       of the Currency
       250 E Street SW
       Washington, DC   20219
```

Jack L. Wagner, Clerk

by: Deputy Clerk